Filed 12/16/20  P. v. Doss CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B300197 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA013552) |
| v. | |
| JOHN DOSS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Pat Connolly, Judge.  Affirmed.

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted John Doss for the 1991 murders of Desiree Mayberry and Larry Thomas and we affirmed the convictions on Doss's direct appeal. (*People v. Doss* (May 4, 1995, B076155) [nonpub. opn.] (*Doss I*).) In 2019, Doss petitioned the trial court under Penal Code section 1170.95 for resentencing, alleging that he could not be convicted of first or second degree murder because of changes made to Penal Code sections 188 and 189 that became effective on January 1, 2019.[1] Doss's arguments here are foreclosed by our opinion in *People v. Galvan*. (*People v. Galvan* (2020) 52 Cal.App.5th 1134 (*Galvan*), review granted Oct. 14, 2020, S264284.) We will affirm the trial court's order.

## BACKGROUND

On the evening of June 15, 1991, Doss, Ed Dwayne Smith, and Tobias Alphonso Tubbs went to the home of Desiree and Billy Mayberry, where Larry Thomas and Sherlene Kuylen also lived, and robbed the home, murdered Thomas and Mrs. Mayberry, shot Mr. Mayberry in the face, and committed various other crimes as recounted in our unpublished opinion on Doss's direct appeal:

"Between 10 and 11 p.m. on June 15, 1991, Doss, Smith, and Tubbs arrived at the Mayberrys' house. Thomas admitted them. Mr. Mayberry also was home, but his wife and Kuylen were not. . . . The two women returned shortly thereafter. Mrs. Mayberry began ironing, Kuylen sat at the dining room table, and Doss sat in a recliner with a gym bag on his lap.

"About 11:40 p.m., Mr. Mayberry went outside to one of his three parked cars to use its cellular telephone. Thomas, Smith, and Tubbs followed him. At some point, Doss came to the door

---

[1] Further statutory references are to the Penal Code.

2

and said the three men had to go. Doss then returned inside. When Mr. Mayberry finished his call, Smith pulled out a gun and ordered Mr. Mayberry into the house. Tubbs did likewise to Thomas while threatening to kill Thomas if he did not comply.

"When the four men returned inside the house, Doss stood and pulled a gun from his gym bag. In addition to his gun, Smith now carried a large hunting knife in the other hand. Smith ordered Mr. Mayberry to walk to Doss. While Doss stood over Mr. Mayberry, Smith ordered Thomas to lie on the floor, while telling Thomas that Thomas had a big mouth. Doss then ordered Mr. Mayberry to lie on the floor with his head near Thomas'[s] head. Smith ordered Tubbs to put the two women on the floor.

"When the four victims were on the floor, the defendants demanded to know where any guns were kept. Mrs. Mayberry told them where her husband kept his .347 Magnum, and Smith took it. Mr. Mayberry complied with Doss'[s] demand that he empty his pockets, and gave Doss keys, change, and jewelry. At Smith's order, Tubbs took the women's jewelry and rifled through Mrs. Mayberry's purse. One of the defendants demanded car and house keys and the Mayberrys either produced or directed the defendants to them. The defendants threw these items, cameras taken from a bedroom closet, and a few other valuables in a pile on the living room floor.

"Tubbs ordered Kuylen to accompany him into the master bedroom, where he demanded to know if any cocaine or guns were in the house. Kuylen said she did not know, but suggested he look in the closet. Tubbs said he would kill her if he found nothing. After unsuccessfully searching the closet, Tubbs pointed his gun at Kuylen and told her to undress. When she was down to her underwear, Doss entered the bedroom and told Kuylen to

get dressed and return to the living room.  Kuylen complied and again lay on the floor.  Tubbs and Doss followed, carrying blankets and pillows taken from the bedroom.

"Smith began kicking Thomas in the face while saying he hated Thomas.  Thomas protested, and Doss told Smith to quiet Thomas.  One of the men stuffed something into Thomas'[s] mouth, and Smith held the knife to Thomas'[s] neck and threatened to kill him if he made more noise.

"Smith told Tubbs to load the loot into, and start, the cars.  Tubbs did so.  Smith told Doss to get additional bedclothes from the bedroom to cover the victims.  Doss did so and put additional clothes over the victims' heads.

"[Mrs.] Mayberry begged the defendants not to kill her because she had a son to raise.  Mr. Mayberry looked up and saw Smith stab Thomas in the neck.  Thomas went into convulsions and Smith executed him with a shot to the back of the head.  Doss, who was pointing a gun at Mr. Mayberry, shot him in the face.  Mr. Mayberry survived major head trauma despite shell fragments remaining permanently in his head.

"Kuylen heard Doss or Smith tell Tubbs to take the loot to the cars.  She heard someone leave and a car start.  Kuylen heard one of the remaining defendants to tell the other to hurry.  Kuylen heard four gunshots.  Although Kuylen was not hit, she heard one bullet pass near her.  Police found two bullet holes near where Kuylen's head had been.  A single gunshot to the back of her head killed [Mrs.] Mayberry.  Forensic examination disclosed that a nine millimeter bullet killed Mrs. Mayberry, while a larger caliber bullet killed Thomas." (*Doss I*, *supra*, B076155, at pp. 3-6.)

4

According to our opinion in Doss's direct appeal, the jury convicted all three of the defendants "of the first degree murders of Desiree Mayberry (count 1) and Larry Thomas (count 2), assault with a firearm on Sherlene Kuylen (count 4), and three counts of residential robbery against Mrs. Mayberry (count 5), Kuylen (count 6), and . . . Billy Mayberry (count 7[).] . . . The jury found true multiple murder and murder during robbery special circumstances . . . and, after a penalty trial, recommended life in prison without parole[ ] for all defendants. Doss and Tubbs were convicted of the attempted premeditated murder of Mr. Mayberry (count 3[).] Smith was convicted of the lesser crime of assault with a firearm on count 3. Among other enhancement findings, the jury found a principal was armed in counts 1-7, all defendants personally used firearms in counts 1 and 4-7, and Smith, in count 2, and Doss, in count 3, personally used firearms." (*Doss I*, *supra*, B076155, at p. 2.)

In his direct appeal, Doss argued that the trial court erred by failing to sua sponte instruct the jury regarding termination of aider and abettor liability based on his contention that "the evidence shows he prevented Tubbs from raping Kuylen by intervening and ordering her to dress and return to the living room." In rejecting Doss's argument, we observed: "Doss participated directly and as an aider and abettor in the residential robberies, murders, and attempted murder and assault of the victims. There is no evidence Tubbs communicated any intent to sexually assault Kuylen to Doss and Smith, or that the group planned, discussed, or attempted to rape the women before completing the other crimes. Thus, there is no evidence that this conduct demonstrated anything other than returning

5

Kuylen to a place where she could be murdered along with the other victims."

The trial court instructed the jury that "if a defendant was not an actual killer, or if the jury could not so decide, 'you cannot find the special circumstances to be true as to that defendant, unless you are satisfied beyond a reasonable doubt that such defendant, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of the murder during the first degree, or <u>with reckless indifference to human life and as a major participant</u>, aided, abetted, counseled, commanded, induced, solicited, requested or assisted in the commission of the crime of robbery, which resulted in the death of a human being, namely Desiree Mayberry and/or Larry Thomas. [¶] You have to decide separately as to each of the defendants the exist[ence or] nonexistence of each special circumsta[nce] alleged in the case. [¶] . . . [¶] If you cannot agree as to all of the defendants but can, in fact, agree as to one or more of them, you make your finding as to the one or more upon which you do agree. [¶] In other words, it's not a question of all or nothing. You can find it as to one or two or none, or all three of them. [¶] You must decide separately each special circumstance alleged in this case as to each of the defendants. If you cannot agree as to all of the special circumstances but can agree as to one or more of them, you must make your finding as to the one or more upon which you do agree. [¶] In order to find a special circumstance alleged in this case to be true or untrue, you have to agree unanimously." (*Doss I*, *supra*, B076155, at pp. 13-14, original emphasis and alterations.)

In rejecting the defendants' contention that the trial court erred by not sua sponte further defining the terms "reckless

6

indifference" and "major participants," we observed that "[t]his special circumstance could be proved either by aiding and abetting a murder with intent to kill, or by aiding and abetting the robberies as a major participant with reckless indifference to human life. Here, there was overwhelming evidence that all the defendants either actually killed with malice and intent to kill, or aided and abetted the murders with intent to kill." (*Doss I*, *supra*, B076155, at pp. 14-15.)

On February 19, 2019, Doss filed a petition under section 1170.95 alleging that he was entitled to resentencing because he was not the actual killer and that he could not now be convicted of first or second degree murder because of amendments to sections 188 and 189 that became effective on January 1, 2019. On June 24, 2019, the People filed an opposition to Doss's petition for resentencing. At a hearing on June 28, 2019, the trial court denied Doss's petition. In its order denying the petition, the trial court stated: "The petitioner was convicted by jury of multiple counts of murder . . . . The jury found true the special circumstances allegation of multiple murder . . . as well as the special circumstances of felony murder . . . . The true finding as to both of the special circumstance allegations renders petitioner's claim pursuant to [section] 1170.95 meritless. Here, the jury was properly instructed and found that petitioner was a major participant in the underlying crimes. [¶] The appellate opinion affirming the petitioner's conviction and sentence reflects that the jury was properly instructed regarding the special circumstance allegation and speci[fic]ally rejected claims by petitioner that there was insufficient evidence."

Doss filed a timely notice of appeal.

## DISCUSSION

Doss contends that the trial court's reliance on the jury's special circumstance finding to determine that Doss was ineligible for relief under section 1170.95 was error.  Doss contends that our Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) elevated the level of culpability required to support a finding that a defendant had acted with reckless indifference to human life for purposes of a felony murder special circumstance finding.  Doss argues that the jury's conclusion in 1993 that Doss had acted with reckless indifference to human life is—based on the change in the law wrought by *Banks* and *Clark*—no longer sufficient to support a conviction for first or second degree murder as those crimes are currently defined by sections 188 and 189.

We rejected these same arguments in our opinion in *Galvan, supra*, 52 Cal.App.5th at page 1143.  In *Galvan*, we expressed "our view that section 1170.95 is not the correct vehicle for a *Banks* and *Clark* special circumstance challenge."  (*Ibid.*)  There, we affirmed the trial court's summary denial of another section 1170.95 petition after we concluded that "[b]y finding a [felony murder] special circumstance allegation true, the jury makes precisely the same finding it must make in order to convict a defendant of felony murder under the new law.  Because a defendant with a felony-murder special circumstance could still be convicted of murder, he is ineligible as a matter of law to have his murder conviction vacated."  (*Id.* at p. 1141.)  We decline to revisit that conclusion here.

Based on our conclusion that the record of conviction in Doss's case establishes that he was ineligible for relief under

8

section 1170.95 as a matter of law, we also reject Doss's contentions alleging trial court error for failure to appoint counsel.  Where a defendant is ineligible for relief under section 1170.95 as a matter of law, and thus fails to make the prima facie showing required by section 1170.95, subdivision (c), counsel need not be appointed.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 332-333, review granted Mar. 18, 2020, S260493.)

## DISPOSITION

The trial court's order denying Doss's section 1170.95 petition is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

BENDIX, Acting P. J.

FEDERMAN, J.*

---

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.